**NOT FOR PUBLICATION**                                                          **CLOSED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TRI3 ENTERPRISES, LLC, | : |
| Plaintiff, | : Civil Action No. 11-3921 (JAP) |
| v. | : |
|  | : **OPINION** |
| AETNA INC., et al., | : |
| Defendants. | : |

PISANO, District Judge.

Plaintiff Tri3 Enterprises, LLC ("Tri3") brings this putative class action against Aetna, Inc., Aetna Health Inc., Aetna Life Insurance Company, Inc., Corporate Health Insurance Company, and Aetna Insurance Company of Connecticut (collectively, "Aetna" or "Defendants"). Plaintiff, a healthcare provider, alleges that Aetna has violated the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, in seeking repayment of monies Aetna previously paid to Tri3. Presently before the Court is a motion by Aetna to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is a motion by Plaintiff to file supplemental authority in opposition to the motion to dismiss and to apply judicial estoppel to preclude certain arguments raised by Defendants in their motion to dismiss. For the reasons below, Defendants' motion to dismiss is granted. To the extent Plaintiff's motion seeks to file

supplemental authority, that part of the motion is granted, as the Court has considered the supplemental authority submitted by Plaintiff's in opposition to the motion to dismiss. However, the Court finds that the such authority does not warrant the application of judicial estoppel. Therefore, Plaintiff's motion is denied in all other respects.

## I. BACKGROUND

The following facts are taken from the complaint (unless otherwise indicated) and, as it must on a motion under Rule 12(b)(6), the Court presumes them to be true for the purposes of this motion:

Aetna offers, underwrites and administers commercial health care plans ("Plans"). Through such Plans, covered health care expenses ("Covered Services") that are incurred by Plan participants ("Insureds") are reimbursed by Aetna subject to the terms, conditions and limitations of the Plans.

Plaintiff is a health care provider that has provided durable medical equipment ("DME") to many Insureds through its wholly-owned and controlled subsidiary companies, Wabash Medical Company, LLC ("Wabash"), Motion Medical Technologies ("Motion"), and Orthoflex Inc. ("Orthoflex"). As a DME provider, Plaintiff, through Wabash, Motion and Orthoplex, has its patients execute assignments that assign medical insurance benefits for Covered Services to Tri3 and that authorize the payment of such medical insurance benefits directly to Tri3. Thus, upon providing prescribed medical supplies to an Aetna Insured, Plaintiff files claims with Aetna for reimbursement pursuant to that particular Insured's governing Plan. Aetna then pays Plaintiff directly pursuant to the assignment executed by the Insured.

Aetna maintains a Special Investigations Unit ("SIU") to detect and investigate false or fraudulent insurance claims. The primary means by which the SIU does this is through post-payment audits, *i.e.*, retrospectively reviewing previously paid insurance benefits to evaluate whether such benefits were properly made to Insureds or assignee providers such as Plaintiff. This audit process includes reviewing the billing practices of healthcare providers in order to identify improper billing and seeking repayment from providers who have improperly billed Aetna. Def. Br. at 2.

Sometime prior to September 10, 2009, Aetna, apparently in furtherance of one such audit, requested information from Plaintiff or one or more of its subsidiaries. The requested information related to the code used by Plaintiff in its billing to Aetna with respect to Plaintiff's rental dispensement of a device called the Game Ready Vasopneumatic Compression Device by Wabash to Insureds. Such codes are used to communicate to the insurer the nature of the healthcare services supplied by the healthcare provider. Plaintiff billed the device using HCPCS[1] E0650 (pneumatic compressor, non-segmental home model), and Aetna apparently questioned the propriety of Tri3's use of that code.

On September 10, 2009, Tri3, on behalf of Wabash, provided information to Aetna "clarifying" its billing to Aetna and the manner in which it reported its rental of the Game Ready device. Compl. at ¶ 15. The complaint states that Plaintiff submitted a number of documents that Plaintiff believed supported the manner in which it billed the device to Aetna. Aetna, however, followed with a letter to Wabash on October 9, 2009 indicating that the device should have been billed under a different code and that the Game Ready device was not a device that was covered by Aetna. While Aetna did not request the return of any

---

[1] This is a reference to the Healthcare Common Procedure Coding System ("HCPCS").

overpayment at that time, the letter did indicate that future claims from Wabash would be subject to pre-payment review, a process by which Aetna requires providers to submit supporting documentation for all claims submitted so it can review corresponding records before adjudicating each claim.

The following month Aetna wrote to Wabash identifying a second device, the NanoTherm device, that Aetna believed was being billed using an improper code. The letter demanded repayment from Wabash in the amount of approximately $650,000. Plaintiff responded to Aetna, "again reiterating its position with respect to appropriate code usage." Comp. ¶ 19.

The parties continued communications regarding the issue from approximately October 2009 to March 2011. Aetna continued to demand that Plaintiff repay monies for the devices that Aetna alleged had been improperly coded in Plaintiff's billing and were not covered by the Insureds' Plans. Plaintiff continued to assert that its bills to Aetna were properly coded. Plaintiff also argued that Indiana state common law and statutory law prevented Aetna from recovering the monies it sought. Aetna disputed this and accused Plaintiff of violating certain federal fraud laws.

In late January and early February 2011, Aetna sent letters to Plaintiff and another of its subsidiaries, Orthoflex, accusing Plaintiff of bad faith and attempting to circumvent the pre-payment review imposed on Wabash by submitting claims for the devices at issue through Orthoflex. Aetna demanded an additional refund of approximately $100,000 from Orthoflex.

Plaintiff maintains that Aetna has no valid basis for seeking restitution from Plaintiff for the alleged overpayments. Plaintiff further alleges that, in seeking such restitution, Aetna violated ERISA by "issuing revised benefit determinations for literally hundreds of claims

without providing the necessary disclosures relating to those decisions or an avenue through which those denials could be appealed." Compl. ¶ 30. According to Plaintiff, the various letters sent to Plaintiff and/or its subsidiaries were these "revised benefit determinations," *see*, *e.g.*, *id.* ¶ 31, at and Aetna failed to provide either Tri3 or its patients with a "full and fair review" of the denied claims pursuant to 29 U.S.C. § 1133 and related regulations. Id. ¶ 71. Among other things, Plaintiff claims that Aetna "denied claims" in a manner inconsistent with or unauthorized by the terms of the Plans and failed to disclose the basis for its determinations as well as other important information relating to the alleged denial of benefits. Plaintiff brings claims under ERISA and seeks unpaid benefits and various declaratory and injunctive relief.

## II. ANALYSIS

A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. The Supreme Court explained the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as

5

factual allegation[s]." (internal quotation marks omitted)).  Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  When evaluating a motion to dismiss for failure to state a claim, district courts conduct a three-part analysis.

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1947 (2009).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950.  Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct.. at 1949 (quoting *Twombly*, 550 U.S. at 570).  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with

6

liability is insufficient.  *Iqbal*, 129 S. Ct.. at 1949.  A plaintiff may not required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Fowler*, 578 F.3d at 213 (3d Cir.2009).

B.  Aetna's Motion to Dismiss

Aetna moves to dismiss Plaintiffs' complaint, arguing that Plaintiff's complaint fails to state a claim under ERISA because ERISA is not implicated by Aetna's actions in this case.  As Aetna characterizes the facts that have been pled, the parties are engaged in a billing dispute centered on the propriety of the bills submitted by Plaintiff (or its subsidiaries) to Aetna for which Plaintiff received payment from Aetna.  As Aetna sees it, the actions complained of arise in the context of fraud prevention and recovery and, therefore, in support of its motion, Aetna relies on a number of cases that have held, primarily in the context of ERISA preemption, that health insurers may, without implicating ERISA, file suits against medical providers to recover monies paid as a result of  fraud and improper billing practices.  Aetna argues that if an insurer may file a lawsuit against provider to recover monies paid as a result of that provider's improper billing practices without implicating ERISA, then an insurer can take steps short of a lawsuit to recover such monies without implicating ERISA.

In response, Tri3 disagrees with Aetna's characterization of the facts and argues that "this case is a coverage dispute and nothing more."  Pl. Brf. at 14.  Tri3 argues that it has properly stated a claim for benefits due under § 502(a) of ERISA, 29 U.S.C. § 1132(a).  It asserts that Aetna's actions constitute adverse benefit determinations under ERISA, and further argues that actions relating to the recoupment of previously paid benefits arise under ERISA.

In support of its motion, Aetna cites a number of cases which have held that ERISA does not preempt an insurer's common law fraud and misrepresentation claims in suits to recover funds previously paid. For example, in *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996), benefit plan trustees brought suit against an employer seeking to recover health benefits improperly paid to a plan participants. The defendants had falsely represented that the girlfriend of one of the defendants was a full-time employee of the employer and therefore eligible for plan benefits. After the death of the woman, and after the plan had paid over $104,000 in medical benefits to the decedent, the plaintiffs discovered the decedent had not, in fact, been and employee and had not been eligible to receive benefits. The plaintiffs demanded reimbursement from the defendants, who refused. The trustees' suit followed, alleging claims under ERISA as well as state common law fraud and restitution claims.

The *Geller* court rejected arguments that the common law fraud claims were preempted by ERISA "because the preemption provision should not be read to contravene the statute's underlying design," which is "to protect the interests of participants and beneficiaries of employee benefit plans." *Id.* at 23. The court noted that the common law fraud claim sought to advance the rights and expectations created by ERISA, and was not preempted "simply because it may have a tangential impact on employee benefit plans." In particular, the court found that "[t]he plan was only the context in which the garden variety fraud occurred." *Id.*

A similar case is *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765 (7th Cir. 2002), which involved plaintiffs seeking to recoup monies improperly expended as a result of a plan participant's fraudulent conduct. After his divorce, rather than pay COBRA coverage

8

premiums for his former spouse as required by the divorce decree, the defendant kept his former wife on his health insurance policy by intentionally failing to notify his employer of the divorce. After learning of the divorce nearly five years later, and after having made medical payments on behalf of the former wife in excess of $122,000, the plaintiffs filed suit. On appeal, the defendant argued that ERISA barred the plaintiff from bringing common law fraud claims to recover those payments. The Seventh Circuit disagreed.

The *Biondi* court stated that "a plan participant's decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law." *Id.* at 781. In reaching its conclusion, the court found that a plan participant has "a separate and distinct duty under [state] tort law" to avoid misrepresentations to the plan. *Id.* at 777. The court noted, "[a] state law claim is not expressly preempted under § 1144(a) merely because it requires a cursory examination of ERISA plan provisions." *Id.* at 780. Further, "far from thwarting ERISA's stated statutory objectives, the Trustees' common law fraud claim is an attempt to protect the financial integrity of the Fund, which is certainly in the Plan participants' and beneficiaries' best interests, as well as being consistent with the Trustees' fiduciary obligations under ERISA." *Id.* at 775.

Aetna also points to a number of cases from this District that Aetna argues support the conclusion that when an insurer seeks to recover payments that were improperly made, ERISA is inapplicable. In *Horizon BCBC v. East Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568 (D.N.J. 2009), plaintiff insurer brought claims in state court for damages against defendant providers alleging that defendants, in submitting claims to plaintiff, misrepresented and inflated their actual charges for services. The defendants removed the case to federal court arguing that the state law claims were preempted by ERISA. The court rejected

defendants argument, finding that the ERISA plan at issue was not "germane" to the dispute. *Id.* at 578. In particular, the court noted:

> Notably, Defendants cite to, and the Court is aware of, no case which has held that a health care plan, similarly situated to Plaintiff, which seeks damages from the overpayment of benefits to a health care provider arising from statutory and common law fraud claims, is acting in a way that enforces the rights of a patient-assignor so as to subject those claims to ERISA's enforcement mechanisms.

*Id.* The court found the basis of plaintiff's claims to be the New Jersey's insurance fraud statute, and, therefore, held that the allegations did not implicate the civil enforcement mechanisms of ERISA. *Id.*

*Aetna Health Inc. v. Health Goals Chiropractic Center, Inc.*, 2011 WL 1343047 (D.N.J. April 7, 2011) followed *East Brunswick Surgery Ctr.* and similarly found that fraud claims brought by an insurer against a provider did not implicate ERISA. Among the allegations by the insurer was that the provider not only billed for services it not performed, but it also improperly "upcoded" its bills to the plaintiff, that is, used an improper billing code in order to receive a higher payment from plaintiff. The court found that ERISA did not preempt plaintiff's fraud claim because, first, plaintiff was not acting in the capacity as a fiduciary in bringing its claims and, second, even if plaintiff was a fiduciary, the claim arose from a separate independent duty. Notably, in reaching the latter conclusion, the court in *Health Goals* rejected arguments by the provider that the issue was a billing dispute governed by ERISA. *Id.* at *5. Similar to the instant case, the provider argued that "[t]he central question for the court … will be whether or not the services provided to [Plaintiffs'] insureds were in fact covered services as defined by the … plans." *Id.* However, the court found the

claims derived from New Jersey's insurance fraud statute and its common law counterparts as defendants' conduct, and not the terms of the ERISA plans, were the focal point of the claims.

One case upon which Aetna relies heavily is *Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery*, as the facts alleged bear some similarity to the present case. *See* 2011 WL 2413173 (D.N.J. June 10, 2011). In *Transition Recovery*, the defendant healthcare provider, Transitions, was a drug and alcohol treatment center. Plaintiff Horizon was a health insurer who provided healthcare benefits to insureds treated at Transitions. During the relevant time period, the healthcare plans at issue provided significantly broader coverage for the treatment of alcohol dependency than for the treatment of other substance abuse dependencies and behavioral disorders.

When submitting claims to the Horizon, Transitions used International Classification of Disease ("ICD") codes to communicate the treatment received by participants and the diagnoses made by the healthcare professional. Over a six-year period from 2002 to 2008, the provider submitted over 8,500 claims to Horizon containing diagnoses of alcohol dependency (that is, used the ICD code for alcohol dependency). In 2008, Horizon conducted a post-payment audit of those claims that it paid to Transitions. Based on its post-payment audit, Horizon concluded that "Transitions misrepresented the diagnoses and condition of its patients in ninety-four percent of the claims it submitted for reimbursement." *Id.* at *1. It was alleged that Transitions submitted claims to Horizon using the ICD code for alcohol dependency for patients suffering from non-alcohol-related disorders.

Horizon sued Transitions for violating New Jersey's Insurance Fraud Prevention Act ("NJIFPA") as well as for common law fraud and negligent representation based upon the allegedly false representations made by Transitions to Horizon with respect to the medical

11

services provided to the participants in employee health benefit plans. Transitions moved to dismiss Horizon's complaint, alleging that its state law claims were preempted by ERISA. The arguments made by Transitions in support of its motion are similar to arguments made by Tri3 in the present case. Transitions argued that "the central component of Horizon's determination is that the services in question were not Covered Services under the specific Plans of each Subscriber." Civil Action No. 10-3197, docket entry 11 at 4. Transitions also argued that in seeking repayment of previously paid benefits, Horizon made an "adverse benefit determination," which required it to comply with ERISA. On the question of "complete preemption"[2] under ERISA, Transitions argued that "'the very purpose of the underlying claim by Horizon--to recoup previously paid benefits that it claims arguably should not have been--falls squarely within the purview of Section 502(a)(3) of ERISA.'" *Transitions Recovery*, 2011 WL 2413173 at *8. With regard to "express preemption,"[3] Transitions argued that the state law claims were barred "because in order to succeed on its state law claims, [Horizon] must prove the existence of an ERISA plan, and demonstrate that [Transitions] misled [Horizon] in order to circumvent the limitations in the plan." *Id.* at *16-17. The court rejected Transitions' arguments and denied the motion. With respect to complete preemption, the court found that ERISA did not completely preempt Horizon's state law claims because Horizon "cannot obtain the relief it seeks by bringing a claim under [ERISA's civil enforcement provision] § 502(a)." With respect to express preemption, the

---

[2] ERISA's civil enforcement provision, § 502(a), completely preempts all state law claims based upon conduct that gives rise to a claim under ERISA and "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

[3] ERISA contains an express preemption clause providing that ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44-45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

court found that "denying [Horizon] any relief would directly conflict with the purpose of ERISA, and [Horizon's] state common law claims do not implicate any concerns underlying ERISA." *Id.* at \*10.

As Tri3 points out, however, not all cases in this District are entirely in accord. In *Merling v. Horizon Blue Cross and Blue Shield of New Jersey*, 2009 WL 2382319 (D.N.J. July 31, 2009), the plaintiffs, who were plan participants, submitted claims to Horizon for reimbursement for psychiatric treatment they received. All of plaintiffs' therapy sessions were conducted by telephone, as plaintiffs were in New Jersey and their doctor was in California. Plaintiffs' benefit plan expressly excluded coverage for "telephone consultations." *Id.* at \*1.

Plaintiffs submitted claims for their treatment to Horizon. They attached to their claims the bills from their healthcare provider. These bills contained a standardized code that was used to describe the services performed. Although the plaintiffs' therapy sessions were conducted by phone, the code used on the bills indicated that the services provided were "individual psychotherapy … face-to-face with the patient." *Id.* at \*2. Horizon reimbursed plaintiffs approximately $100,000 for their claims over a period of several years.

Eventually Horizon conducted an audit of plaintiffs' claims and informed plaintiffs that Horizon had improperly reimbursed them for their claims. Horizon stated that the code used on the provider's bills misrepresented the type of services performed, and Horizon advised that if the services had been accurately represented, Horizon would not have issued benefit payments. Horizon demanded reimbursement from plaintiffs and ultimately terminated their coverage. Plaintiffs sued, alleging ERISA violations and various state law claims. Horizon counterclaimed, alleging fraud, misrepresentation and violation of NJIFPA.

Unlike in *Transitions*, the court in *Merling* determined that Horizon's common law fraud and misrepresentation counterclaims were preempted by ERISA.[4] It concluded that Horizon could have brought its claim under § 502(a) of ERISA and, further, that "plaintiffs' potential liability derives entirely from the duties imposed by the Plan" because interpretation of the plan's terms, specifically with respect to whether plaintiffs' claims were covered, form an "essential" part of the counterclaims. *Id.* at *11.

Having carefully considered the relevant authority on the question, including that cited by the parties in their briefs and supplemental submissions, the Court agrees with Aetna that Tri3's complaint fails to state a cause of action because the actions taken by Aetna fail to implicate ERISA. As an initial matter, the Court rejects Tri3's argument that this is nothing more than a coverage dispute. It is clear from the complaint that the central issue of the dispute is Aetna's allegation that Tri3 had misrepresented to Aetna the nature of the medical device that had been supplied to Insureds. *See* Complaint ¶ 15 (Tri3 provided information to Aetna "clarifying" its use of the selected code); ¶ 17 (parties communicate regarding code selection); ¶19 (Aetna "reiterated" its position regarding proper code usage) ¶ 23 (Plaintiff "reiterated" it "had submitted properly-coded claims"). Aetna asserted that Tri3 had committed fraud and requested return of the monies paid. *Id.* ¶ 20. Aetna then placed Tri3's subsidiary, Wabash, into pre-payment review in order to double-check its bills going forward, after which Aetna alleged that Tri3 began deceptively billing the same piece of equipment through a different subsidiary not subject to pre-payment review. *Id.* ¶ 26.

---

[4] Plaintiffs in *Merling* initially conceded that Horizon's NJIFPA claim was not preempted, but argued in their reply brief that it was preempted. Because the argument was not timely raised, the *Merling* court did not address the question of preemption as to the NJIFPA and the claim was permitted to proceed.

Furthermore, the Court finds *Transitions*, *Health Goals* and other cases holding that an insurer may bring claims for fraud and misrepresentation outside the context of ERISA to be persuasive and relevant to the instant dispute. Just as in *Transitions*, for example, the insurer here, Aetna, accuses a healthcare provider of submitting claims for benefits in a negligent or deceptive manner and thereby obtaining payment for services not covered by the plans at issue. Aetna, like the insurer in *Transitions*, conducted a post-payment audit and uncovered the negligence or deception and made a demand for repayment. In *Transitions*, the insurer demanded repayment by way of a lawsuit in state court alleging fraud and negligent misrepresentation. Here, Aetna has not filed a lawsuit, but rather has demanded repayment through correspondence sent directly to the provider. The fact that it was Tri3, however, who reached the courthouse first, does not transform the nature of Aetna's actions into an ERISA violation. As *Transitions*, *Health Goals* and other cases cited above cases make clear, when an insurer believes a provider has misrepresented the nature of its services, and the insurer has made payments to the provider based upon the misrepresentation, the insurer may file a lawsuit seeking recovery of those monies without implicating ERISA. Certainly if an insurer may seek recovery of those monies by way of a lawsuit without implicating ERISA, a mere request by the insurer to the provider for such monies, as was made in the present case, does not implicate ERISA.

As noted in *Health Goals*, in cases like the present involving a provider's alleged misrepresentations, it is the provider's "conduct, not the terms of the ERISA plans, that is the focal point of [insurer's] claims." 2011 WL 1343047 at *5. Moreover, the basis upon which an insurer seeks recovery in such circumstances derive from state law. *See, e.g., Health Goals*, 2011 WL 1343047 at *5 (As opposed to being derived from the particular rights and

obligations established by the plans at issue, plaintiffs "claims are derived from New Jersey's insurance fraud statute and its common law counterparts."). Even though reference to the relevant plans may be required to establish the context of any alleged misrepresentation, this is not sufficient to bring Aetna's actions into the purview of ERISA. Consequently, Aetna's motion to dismiss is granted.

## III.  CONCLUSION

Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted. Plaintiff's motion to file supplemental authority is granted to the extent that the Court has considered such supplemental authority, and is denied in all other respects. An appropriate Order accompanies this Opinion.


                                      s/ JOEL A. PISANO
                                      Joel A. Pisano, United States District Judge


Dated:  April 23, 2012